on behalf of the appellant, unless I'm directed or questioned otherwise, I would like to direct my remarks to Mr. Nguyen. I pronounce it Mr. Nguyen. You'll have to forgive me, Your Honor. I'm sorry. Speak a little louder, please. Yes. I pronounce it Mr. Nguyen. And I'm going to focus my remarks on his primary claim, which is that the trial court violated his Confrontation Clause rights when it refused to permit him to cross-examine Kiet about his probationary status and about his admitted participation in a drive-by shooting. There were two major misapplications. We have three certified issues here and then three which you would like us to take another look at. That is correct. All right. There were two major misapplications of federal law in the state court's resolution of this particular Confrontation Clause issue. And in my fondest dreams, I would like the Court to address both of them in a favorable decision. The first, which was the primary basis of the trial court's ruling, is that there's a condition precedent to a defendant's exercise of his right to cross-examine about these two areas. And that condition precedent is proof positive that there's an agreement between the witness and the State such that the witness is trading his testimony for some consideration. That's absolutely not the State of the case law. The cases uniformly focus on the state of mind of the witness. The objective reality of any agreement is not a predicate at all. Now, are we talking about the ruling which denied the evidence of the witness was on felony probation? That's where that's part of the Confrontation Clause. My two claims are that the defendant was precluded in two areas. He couldn't touch the probationary status of this key witness, and he couldn't discuss his admitted participation in a shooting. Right, right. So I'm actually focusing on them together because the trial court based both of those rulings on the insistence on this condition precedent. And you got a favorable determination as to the probationary status in the district court of appeal, right? No. I got an unfavorable result across the board. The one thing I did get was in the State appellate court, they admitted that there I'm sorry. I got them reversed. Okay. Not the probationary status, but the district court of appeal agreed with you on the impermissible restriction on the drive-by in Sunnyvale. Yes. Affirming what the California State court of appeal had said, but also affirming its application of Chapman. And that's why I lost on both levels. Right. But then went on to find that the constitutional violation was harmless error. Correct. Okay. Correct. And so just on this point about the condition precedent, the Supreme Court case is a uniform that is not an essential predicate. Davis says that. Alford says that. And in addition to that, I cited a couple of Federal habeas cases in my briefs, which I was surprised to find deal with the precise same error. You know, it seemed to me it was so clearly an error that courts would not be typically making it. But it did happen in a couple of other habeas cases. I cited the Wilkerson case from the Fifth Circuit, and that involved a prison transfer. And the prosecution made the same argument, and the trial court adopted it, that there was no proof that it was part of any agreement with the witness. And what the Fifth Circuit said was, and this is the quote, what tells, of course, is not the actual existence of a deal, but the witness's belief or disbelief that a deal exists. And that's precisely the reasoning in a district court in Michigan, in the Gonzalez case, where the issue was a sentencing enhancement that the witness hoped not to receive and was precluded from eliciting at trial. And that court said that even though it wasn't in any plea agreement, here's the quote from that case, the witness still might believe he still had something to gain beyond what was contained in the formal plea agreement. So it's clear that that's a misapplication of clearly established Federal law when the trial court did that. But the heart of the matter is the misapplication of Chapman. And there were two errors that the State court of appeal made when it applied Chapman. The first is it misapprehended the standard. And of all people, it was the Attorney General who best summarized and accurately stated what the State appellate court did. What they did was they put aside the testimony of the witness at issue, Kiet, and then they looked at the rest of the evidence in the record. And as in the words of the Attorney General, the court determined whether there was other evidence that supported the convictions. It looked through the record. It found some other evidence to support the convictions on the counts at issue, and therefore found a harmless error. And then on the lone count where Kiet's testimony was the only witness, it was the only information, the only testimony on the subject of the terrorist threat count, they reversed that. So what the State appellate court was clearly doing was just looking for some evidence in the record to support the conviction. That is absolutely not an appropriate application of Chapman. Breyer. But what's wrong with that? I mean, I – maybe I misunderstood, but I read what the DCA did as being carefully applying the Chapman standard to the individual counts of conviction, looking at all of the evidence that supported each count of conviction and making a separate determination under Chapman as to whether the restriction amounted to harmless error with regard to the conviction on each count. You're saying that you can't do that? I'm saying clearly you should look count by count, and that's clearly appropriate. But what the standard – It's almost like a split verdict in a multi-count indictment where the jury acquits on some counts but convicts on others, and then the claim is made that the jury didn't give individual consideration or sufficient consideration to the evidence. And our case law says that, well, if we look at the fact that the jury acquitted on some and convicted on others, that's a pretty good indication that the jury carefully considered the evidence as it related to each count of the indictment. Doesn't the same principle apply by analogy to what the DCA did in applying Chapman? Well, first of all, what the Court did in looking at this other evidence was not look to see how the errors impacted the verdict. So, yes, they looked count by count to what evidence was there, but they didn't ask themselves an answer whether the errors had a substantial influence on the verdict. All they did was look for some other evidence. But here's the case law. Wait a second. Let me challenge that for a second. The Court noted that Mr. Kiet was not an eyewitness to the actual gang fight because he wasn't there, and instead it looked to the testimony of the eyewitnesses and the co-defendant participants who testified against him to find that the jury had sufficient other evidence on which to base its conviction. What's improper with that analysis? That seems to me to be a logical way to look at the trial. That brings me to pretty much my best point in my argument. And what makes this case unique is when the Court did that, and this is the second part, my first argument is that they misapprehended the standard. But when they looked to that other evidence, what the State appellate court did was to credit testimony that clearly had been rejected by the jury. And that's what distinguishes this case from the run-of-the-mill habeas case, because the record is clear that the jury rejected the very evidence that the reviewing courts here 2-4 have released. Well, I don't think that responds to my concern, because if you agree with my statement, which I thought I read in the DCA opinion, that Kiet was not an eyewitness participant and therefore had no competent evidence to offer on the actual counts of the assault and attempted murder convictions because he wasn't there, then I don't think your argument is making any sense. Well, there's one other fact that the Court's not referencing, which is that Kiet is the leader of this gang that all of the prosecution witnesses belong to, and there's testimony in the record that they all met together in somebody's house. This is Kiet, Danny, D.N., and Van. And Kiet was the one who told the eyewitnesses that the defendant was there. So to say that, to just look at the testimony and say that Kiet wasn't there and therefore he's less central to what happened in this case is clearly, it seems to me, wrong in light of that testimony. Don't forget the jury --- Did the jury hear that? Was that inquired into on cross-examination? Yeah, yeah. That's in the record. I don't recall the exact cross-examination. So the jury heard the defense theory that the witnesses of the rival gangs got together and essentially cooked up the story so that they could do in their plan. Right, to the extent that he was permitted to do that. Because he was a rival gang member and they obviously had a motive to testify. Right, right. But apart from that, Kiet is, and this is part of the Van Arsdell analysis when you go through the separate factors, Kiet was the only one who put the defendant as the planner of the incident. He's the guy who says that the defendant called him up and told him to stay there. If he doesn't stay there, he's going to come and kill him. He says yes, and then he goes off to get his shotgun. And so he's the only one. That was the count that was the threats count that was set aside by the District Court of Appeals. That phone call. Yes, that part of the phone call where he makes that threat was set aside. If you don't come, I'll kill you. If you don't stay there, I'll kill you. I believe that was the alleged threat. Okay. But so that's non-cumulative of anything else, and it certainly goes to the conspiracy count. You know, I didn't, to tell you the truth, I didn't understand the rationale of the State Court of Appeal when they referred to the overt act. There were two overt acts that were found true with respect to the defendant. One of them clearly was derived from Kiet's testimony, and one of them was clearly independent of it. And so they say, the State Court of Appeal, that because it's independent of Kiet completely and totally, then that shows that it's harmless beyond a reasonable doubt. But the overt act had nothing to do with the defendant. All it was was that the two gang members who had the knives were armed. That was the overt act that was found true. So how you could get from that to say that Kiet's testimony was harmless in the jury's mind with respect to the defendant's involvement in the case is really something I don't understand. So clearly ---- I assume California law is similar to Federal law in that you have to have an agreement in an overt act in furtherance of the conspiracy. I believe that's correct. And they didn't need Kiet's testimony to show that gang members showed up at the fight arming themselves with weapons, did they? Right. Right. But they still had to find ---- So why wouldn't that be sufficient, independent of whatever it was that Kiet said, to find the defendant liable for the crime of conspiracy? Because it doesn't say anything about the defendant's involvement in the conspiracy. My argument, and I believe it's the only reasonable way to read the record, is that the only way they could have concluded that the defendant was a member of this conspiracy was because of Kiet's, number one, testimony, and, number two, molding the testimony of the others. And the one thing I really want to stress, and I don't want to get lost, you know, through the cracks, is that the district court and the State appellate courts expressly relied on the other parts of the record that were rejected by the jury. And so they say, well, D.N. identified the defendant as being there. And D.N.'s testimony was that the defendant was there with a gun, and we know as a fact because there was a special arming allegation in an overt act that specifically asked the jury to find whether the defendant had a gun or not. But he didn't. Why shouldn't a reviewing court look at the evidence in the light most favorable to the prosecution? The fact that the jury doesn't find proof beyond a reasonable doubt does not mean that there is not that that evidence was completely incredible. I mean, how can we assume by virtue of the fact of an acquittal? It doesn't mean he didn't do it. It just means that the government didn't prove it by proof beyond a reasonable  That's true. That is what it means. But how could a court then look to that evidence to say, to fill in the evidentiary gap left by taking out the testimony of Kiet? Because the problem I'm having is that without a special verdict form, it's very difficult for us as a reviewing court to figure out what it is that the jury credited and what they didn't credit when they simply return a general verdict of not guilty as to one or more counts of a multi-count indictment. Right. But here you do have those. That's my point, is you do have the special verdicts. You have a specific question, was the defendant there with a gun? And that is in both the overt act allegation and the conspiracy count and in the special arming allegation, and they found it was not true. So we, you know, we know that the jury rejected that. Now, to say that they could therefore still credit that very same testimony they didn't find true beyond a reasonable doubt to somehow compensate for this constitutional error, I just, I suggest to the Court, is unreasonable. And that's, you know, the main characteristic of what happens here, that it's not just a matter of the exercise of discretion. You know, when you apply a multi-factor test or you're applying a broad principle like the Confrontation Clause, there's a greater range of discretion that certainly in the habeas context, this Court would have to say is within the realm of reason. My point is that this is not within the realm of reason because they're specifically relying on facts that were rejected by the jury. And I just wanted to see – I was going to go through all the Van Arsdale factors, and I suppose what I'll do is I'll reserve my last five minutes. Roberts. You may do so, counsel. We'll hear from the State. May it please the Court. Peggy Rufre, Deputy Attorney General for Respondent. Your Honor, I'd first like to correct one point. That was that the State court actually did find error but harmless as to both of these incidents, the exclusion of the felony probation and the participation in the drive-by shooting. They had some discussion about whether he really was on felony probation, but then said even assuming that he was, then we find that any error was harmless beyond a reasonable doubt. So our argument as to both those points is that that finding was not an unreasonable application of Chapman. For the reason that? I'm sorry? For the reason that? The State court specifically applied the Van Arsdale factors. It listed the five factors, and then it carefully went through the evidence. It found that there was prejudice as to the terrorist threats conviction, and that was the one where Kiet's testimony was the only evidence to support it. But as to the remaining convictions, it found that the Van Arsdale factors were met. And in response to one point that was made by counsel, Van Arsdale specifically says there's five factors. And the last one says, and of course we review the overall strength of the prosecution's case. And so it's certainly legitimate for the State court to look at that other evidence and to see whether that is compelling evidence of guilt. And that's what they did in this case. First of all, they noted that Kiet was not there during the actual attack. So despite an attempt to portray him as the star witness, he clearly was not. And in fact, I was reading the arguments of counsel, the closing arguments last night, and Mr. Nguyen's defense attorney said that he thought that D.N. Lee was the star witness. Well, I would assume that the testimony of a participating fighter would be, I mean, that to me sounds like star witness-type stuff. That's an eyewitness who was actually involved in the fight, and that's not Kiet. Correct. And so it was reasonable for the State court to rely on that. Kiet didn't offer any testimony as to the conspiracy charge on the overt act that the gang members armed themselves. That's all you need for the conspiracy count. And as a matter of fact, I think that if Kiet hadn't testified at all, there would have been ample evidence of both the conspiracy and the aiding and abetting the assault charges, because then you would have had evidence that one of the gang members came in, asked if the surveillance camera was on, went back out, and then the gang, including several who were armed, rushed in and committed the attack. If he was not an important witness, why was the State so interested in keeping from the jury the fact that he was on probation and these other things about his drive-by shooting and his other behavior? Why was it so important to keep the jury from knowing about him if he's not an important witness? Well, I think it's pretty standard for the prosecution to try to limit the amount of impeachment evidence of its own witnesses. This is good impeachment, though. This is good stuff to have to tell the jury, well, you know, he's on probation. He's going to tell the story that the police want him to tell. Well, even if that evidence had been admitted, we know from the in-limiting testimony that Kiet was going to say, I don't have any belief that I was going to be prosecuted, and the D.A. confirmed that, that they weren't intending on prosecuting him. So I'm not sure how much value that really would have had. But the State court said, even assuming that — it actually quoted Van Arsdale, which says that the question that the State court's reviewing task is, assuming that the damaging potential of the cross-examination had been fully realized, was the error harmless beyond reasonable doubt? They quoted that, and then they applied that standard. And the extent of cross-examination that was permitted is one of those factors. And in this case, the D.A. started out his argument, like on the first and second pages of his argument, he starts out by saying that if Kiet had been successful at retaliating for this incident, then he's the one who would be sitting in the defendant's chair. So they were under no illusion that Kiet was somehow cloaked in a false aura of credit credibility or believability. He was impeached with evidence of a conviction for attempted second-degree burglary. He — we knew — they knew he had been in several gangs. He'd been in a number of gang fights. He said he'd been arrested too many times to remember. He had participated in the fight at the café the day before, which was the motive for this retaliation the next day. And the jury knew that his — his first impulse when he learned that this gang was coming was to go and get a sawed-off shotgun, and that he was planning on — once this happened and he came back and saw that the police were there, he was planning on another round of retaliation. And when he was first interviewed by the detective, he was under arrest for a different incident and was in jail. And the jury knew all of that. So he clearly was — they clearly had a good impression of what this was all about. They knew that everybody involved was a gang member. They heard extensive testimony about what that meant, too, from the gang expert and how these Vietnamese gangs in San Jose engaged in retaliation and violent conduct. And so I think that's an important factor to consider. And again, the state court mentioned this. That's one of the Van Arsdell factors. It's our position that that was an entirely reasonable approach. One of the other factors the state court relied on was that there were other people who had identified Mr. Nguyen as being one of the participants. And there's been some challenge to that testimony. But the fact that the jury found the overt act about Mr. Nguyen having a gun not true doesn't mean that they didn't believe the testimony from Dien Le that he was there. Now, this was the 14-year-old stabbing victim. He testified he had been stabbed four times. His lung had been punctured. He felt like he was about to pass out. He went outside, and for 5 to 10 seconds, he says he saw Mr. Nguyen pointing a gun. Well, obviously, there was some problem with that testimony. He was — he was under extreme physical and emotional distress. It was a very brief glimpse. So there wasn't proof beyond a reasonable doubt on that particular point, whether Mr. Nguyen was there with a gun. That doesn't mean the jury disbelieved that he said he was there. And that's what the state court was relying on. And again, was that unreasonable? Which means beyond clearly erroneous, but actually objectively unreasonable to rely on that. And we submit that it's not. But there's also more evidence that Mr. Nguyen was present and participating, and that's from the other eyewitness I.D., Van Nguyen. He was evasive at trial about this, but he told Detective Williams that he knew Mr. Nguyen personally before this incident, and that he was positive he was one of the people that was there. Now, he wouldn't circle the picture on the photo I.D. because he was extremely terrified that if he — if he went that far, that he would be killed by this — this violent gang. And that's also the explanation for why he was evasive at trial. But the jury understood that those kind of considerations come to bear in this kind of a gang case. So you have both of these witnesses identifying him as one of the people who was present. And it was entirely reasonable for the State court to rely on that evidence in assessing the overall strength of the prosecution's case. I think one of the — an instructive case to look at is Woodford v. Viscotti. It was in the Strickland context, but that was a case where the Supreme Court said the State court focused on these particular factors in finding harmless error. And the court of appeal had focused on other factors. The Supreme Court said it wasn't unreasonable for the State court to take that approach. And maybe if we were on direct appeal, we would have reached a different verdict. But we're looking at the State court. And if you look at what they did, that was entirely reasonable. So I think that's the same situation we have here. The State court's carefully going through. They're looking at all the Van Arsel factors. There's compelling reasons for each one of those. Let me also mention the motive evidence, which was very strong. It was the defendant's own brother who had been injured the day before. It was clear that these gangs retaliate and retaliate and retaliate. It's sort of a never-ending saga. And he participated. He was the one person who had probably the most reason to participate in this attack the next day, because there was evidence that when a gang member is injured or disrespected in any way, then you have to come back, escalate the violence, and retaliate. And if you don't, then nobody's going to respect you as a gang member. So very strong motive evidence in this case. When you take that all together, the State court's finding was reasonable. Even if it wasn't, even if there was some problem with one factor or the other, which we don't believe there was, then the court applies Brecht and can consider everything again. And for all the reasons that we've said, we think that there was – that it was clearly harmless in this case. Roberts. Thank you, counsel. Mr. Dukoff, you've got some reserved time. Yes. It's clear that it's important to Judge Tallman the view of Kiet is not a star witness. I've talked about how he was the one who told the others at the first that the defendant was there. He was also, I would point out, the very first gang witness that was called by the prosecution after their gang expert. If you look at the prosecution's closing arguments, he refers to Kiet's testimony five or six times. I have the citations in my briefs. And not only that. Well, I'm not so sure – I mean, he's clearly an important witness. Whether you want to label him as a star witness or not, you know, I guess we could spend all morning talking about that. But what is concerning me, and your opponent gave an example of it, you know, how do you respond to her argument that with regard to the gun count, the jury might well have acquitted Mr. Nguyen of the aggravating factor of while armed with a firearm. I mean, you can't – I don't think you can conclude, can you, from the acquittal on the gun count that the jury must necessarily have found, as a matter of fact, that he wasn't there. I mean, they did convict him of assault, aiding and abetting, and attempted murder. So they obviously believed he had something to do with the fight on the day in question.   fact, that he wasn't there. My argument is they did that based on Kiet's testimony, and the only objective indicia in the record is that they disbelieved everything that this fellow D.N. said. It wasn't just the gun. That's where you and I, I guess, part company. How can you conclude that the jury disbelieved everything that D.N. said when all we know for sure is that they entered a finding of not guilty, meaning that the State had not proved each element of the aggravating charge by proof beyond a reasonable doubt. I think there's a difference there, and I think it's a difference that makes a difference. Well, I guess I have to disagree with the Court. I think that the only thing we have to look at is the record, and the record is certainly in the defendant's favor. But then if you want to put aside that point and look at these other factors. Let me ask you this more directly. What I hear you arguing for is a per se reversal rule, that if we find a confrontation violation under the Sixth Amendment, that we must presume that there was harm and therefore must overturn the conviction. Yeah, but only if there is these objective, readily determinable indicia in the record to show what the jury's thinking was. Now, I understand the Court's point that a finding of not true does not equal an absolute determination by the jury that they rejected everything he said. But that's all we have to look at. And if that's not enough, then look at all of the other arguments I've made as to the centrality of Kiet's testimony. There was one other point, and it should not be lost, is that there was an evolution of stories in the year following the incident. So each of these prosecution witnesses spoke to the police three or four times each, and not a single one references the defendant at all. Suddenly, you know, 13 months later, this Kiet is the first one to identify him to the jury, and the others follow suit. So what do we do with your opponent's observation, which we have certainly seen in gang cases before, that fear of retaliation against witnesses is a powerful motivator for reluctant witnesses and can explain why the facts sort of tumble out over time here.  The Court could speculate that that is the --. Well, I'm not speculating. I mean, am I correct that the jury heard all of that from the testimony of the SJPD gang crimes detective who explained to them that these are factors that are at play when we are dealing with violent street gangs? Of course. But it doesn't explain what happened in this case because these witnesses --. Why not? It's a record. Why can't the jury consider it in evaluating the credibility of the evidence that they're hearing in the court? They could, but it's inconsistent with what else they were doing, what else the witnesses were doing, which was implicating all these other dangerous gangsters. So, you know, at the same time, you're trying to --. The Court suggesting that it was fear that kept these witnesses from coming forward. They were implicating dangerous gangsters. And, you know, don't forget this was a fight between the VG gang and Kiet's gang. And VN is not --. It's not an overwhelming case that VN was present. And I see that. I'm out of time. I would just -- my opponent talks about all of the other evidence that had been submitted going to the credibility of Kiet. And I couldn't get this into my supplemental authorities letter regarding Fowler. But Fowler talks about that. And there's a distinction also made in Davis between attacks, general attacks on credibility such as criminal convictions and attacks that go to the specific case at issue. And that's my response to that point. And if the Court does not have any further questions, I could do it. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Tallman